# HAM CONST. CO. v. DEMPSTER BROS., INC.—255 S. W. (2d) 712.

Eastern Section. November 19, 1952.

Petition for Certiorari denied by Supreme Court, March 6, 1953.

358

Cunningham & Van Cleave, of Chattanooga, for plaintiff in error.

Anderson & Snepp, of Knoxville, and Strang, Fletcher & Carriger, of Chattanooga, for defendant in error.

HOWARD, J. On August 25, 1950, the plaintiff, Ham Construction Company, a corporation, purchased from the defendant, Dempster Brothers Inc., machinery dealers with offices at Nashville, Knoxville and Chattanooga, two Model D. Diesel Tournapulls and two scrapers, at a price of $30,804. These machines were purchased by the plaintiff to be used on construction work at the Arnold Engineering Development Center near Tullahoma, Tennessee, where the plaintiff had previously procured contracts.

Under the terms of the sale plaintiff paid $3,080.40 cash and executed a title retention contract and note for the balance of $27,723.60, payable in monthly installments of $3,080.40. Plaintiff paid the monthly installment due September 25th but defaulted on the October and November payments. On December 11 the defendant repossessed the machines which, at that time, were in Coffee County, and took them to Nashville where they were kept in one

of the defendant's buildings until after the public sale which was held on December 21st.

Upon repossessing the machines the defendant advertised them for sale by placing three posters in the City of Nashville at the following places: One on the bulletin board at the Davidson County Court House, one on the bulletin board at the Federal Building, and the third on the side of one of the defendant's buildings at its place of business on Foster Avenue where the machines were located.

The posted notices informed the public that the defendant would sell the machines ''at public auction or sale to the highest and best bidder for cash at 10:00 o'clock A. M. on the 21st day of December, 1950, in the yard of its place of business on Foster Avenue in Nashville, Davidson County, Tennessee, where said property is now located,'' and listed the four items to be sold.

On the date of the sale the machines were sold at public auction, the defendant bidding them in for $20,000. There were no other bids. No question was made as to the contents or form of the notices, the time within which they were posted, or of the sale, and it was admitted that J. B. Ham, President of the plaintiff corporation, was duly notified regarding the date and time of the sale, and that he sent two of plaintiff's employees, one being the superintendent, to the sale. These employees admitted that they were present at the sale but did not participate therein.

Plaintiff alleged that the defendant, upon regaining possession of the property, failed to comply with the statute, Section 7287, Williams' Code of Tennessee, and sued to recover $6,299.42, which amount was paid by plaintiff before default, and a jury was demanded to try the case.

It appears that after filing suit the plaintiff corporation went into bankruptcy, and the duly appointed Trustee subsequently took over the prosecution of this suit.

At the conclusion of all the evidence the trial judge, upon the defendant's motion, directed a verdict for the defendant, the judgment of the Court being that the defendant had substantially complied with the law in all requirements. Thereafter motion for a new trial having been made and overruled, this appeal in error was granted and perfected.

First it is insisted that one of the notices was not posted in a public place as required by the statute; that the notice posted by the defendant on the side of one of its buildings, located in the yard of its place of business on Foster Avenue, in the City of Nashville, was not a public place. No question was made regarding the two other notices.

Under our decisions the notices must be posted in accordance with the conditional sales law, and a public place has been defined as a place where many people are accustomed to congregate or pass by, and where such notices are likely to attract public attention and their contents become known to the community, and thus give information of the sale to persons who may be interested and possibly become bidders. Dacus v. Knoxville Outfitting Co., 9 Tenn. App. 683; 78 C. J. S., Sales, Section 601, pages 363, 364.

It appears that the side of the building on which the notice in question was posted was about 10 feet from a road used by the public generally and particularly by contractors doing business with the defendant, and that said building was located about 12 feet from the defendant's main office building. Regarding this notice Mr.

Strand, Branch Manager of the defendant's Nashville office, testified as follows:

"D21 Now is the place that you posted that notice there on the shed, was that a public place? A. Yes sir.

"D22 Was that located where there would be a few or many people who might be interested in such type of equipment, might pass by and have occasion to see such notice? A. Yes sir.

"D23 Is that, just describe the situation there. Is that on a roadway or driveway where contractors come and go—

"Mr. Cunningham (interposing): Well now, may it please the Court—

"The Court (interposing): Don't lead him.

 \* \* \* \* \* \*

"D24 (Mr. Carriger) Just state, what opportunity would there be for people, interested people, people who might be interested in purchasing such equipment, to see it at the place you posted it there on that shed? A. Well, our office, of course, see, in this business, and parts and equipment, and people in this business that would use a piece of equipment like that would be and do come to our office regularly for parts and equipment, and that access road, there's a private road by the, it, it's open to the public and there's forty or fifty cars a day go through there as a short-cut, so it's—

"D25 (interposing) You say there is a short-cut—A. (Interposing) Yes sir, between two streets.

"D26 And does the public use it generally? A. Yes sir.

"D27 Or is it used solely by your customers? A. No sir, generally.

"D28 And the public uses it generally? A. Yes, sir.

"D29 And what type of people would be interested in purchasing machinery of this kind? A. Contractors.

"D30 And does Dempster Brothers do business with few or many contractors? A. Many contractors.

"D31 And do few or many of them in the course of a week use that road adjacent to this shed where this was posted, in coming to your premises there— (Interposing, and continuing)—to do business with Dempster Brothers? A. There are many."

■■ Under the circumstances did the notice in question, posted by the defendant, substantially comply with the law? This question must be answered in the affirmative. From where the notice was posted it could not only be seen by the traveling public using the highway, but also by contractors and road builders going to and from the defendant's office, who might be interested in purchasing the machines. Therefore, the location of the notice was not only advantageous to prospective buyers, but to the defaulting purchaser as well. Under our decisions a substantial compliance with the statute is all that is required. Allen v. Reed, 147 Tenn. 612, 250 S. W. 546; Range Motor Co. v. Tipton, 161 Tenn. 427, 431, 33 S. W. (2d) 75; Quick v. Woodward Motor Co., 23 Tenn. App. 254, 130 S. W. (2d) 147.

Complaint is also made that the sale was not held "in the yard" of the defendant's place of business as designated in the notice, but was held inside of one of defend-

ant's buildings instead, and that the sale did not comply with the law.

■■ It appears that the machines were very large and extremely heavy and were difficult to move, and that when they arrived in Nashville, they were placed in one of the defendant's buildings to protect them from the weather, where they remained until the date of the sale; that said building housing the machines was located on the defendant's premises, only a few feet from its main office building, and that because of the extremely cold weather the sale was held inside the building; that those in attendance, including plaintiff's two employees, had no trouble in locating the place of sale. This would seem to be a substantial compliance with the law as, by reasonable inference, the defendant's yard would include the defendant's buildings. Furthermore, any one attending the sale and desiring to bid on the machinery could have readily ascertained by inquiring at defendant's office where the sale was to be held. Notice which reasonable conveys to the vendee information as to the time and place of the sale of the property repossessed is sufficient under this statute. 47 Am. Jur., Section 967, p. 181.

In Dacus v. Knoxville Outfitting Co., supra, the place of sale was designated as 208-210 South Gay Street, in the City of Knoxville, where the conditional vendor's business occupied the three floors of the building. Though the decree was reversed on other grounds, the Court approved the location of the sale, saying:

"The proof indicates that the defendant conducted its furniture business on each and all of the three 'floors' of the building, and it is a reasonable inference from all the circumstances that anyone desiring

to attend the sale could, when they reached the building indicated by the sale notices, have readily ascertained by inquiry the particular place where the sale was to be held in the building.

"There was an elevator in the building, and the evidence does not tend to show that there was any effort or purpose on the part of defendant to conduct the sale in such place or in such way and manner as to prevent the attendance of prospective bidders or interested persons. We are of the opinion that, upon the facts of this record, a sale on the third floor of defendant's store building was a sale at the place designated in the sale notices."

Next insistence is made that the sale was void because the machines were not sold separately but were sold together or in lump, and that the sale as conducted did not constitute a valid sale.

■ In support of this assignment the plaintiff relies upon the rule stated by the Court in Dacus v. Knoxville Outfitting Company, supra, where the vendee made several purchases of household furniture at different times and under separate contracts. Upon repossession of all the furniture, the vendee sold it in lump and not separately, and the Court held that the sale was void, because the furniture was not sold separately. In the instant case it appears that the details of the original transaction were simultaneously made, i. e., the machines were purchased by the plaintiff at one time, on the same date, and under one contract. Because of the nature of the original transaction, we think that the machines could be sold together in one sale, as was done, and the rule announced in the above cases would not be controlling.

Furthermore, it appears that after the auction started but before the defendant's bid was accepted, Mr. Strand,

who was conducting the sale, requested of those present if there were any more bids; that he specifically asked the plaintiff's two employees, who were standing nearby, if they wanted to bid on the machines, and that one of them replied that they did not. Under the circumstances, we think that the sale was conducted in such a manner as to protect the rights of the vendee, who made no showing otherwise, and that under authorities heretofore cited the law was substantially complied with.

 Insistence is also made that the sale was not for cash to the highest bidder, but was conditioned on receiving additional bids for a 24 hour period, and was, therefore, contrary to the provisions of the statute. This assignment is based on the announcement which was made immediately prior to the sale by Mr. Strand, who was conducting the sale, as follows:

"I wish to bring out that the highest bidder will be given twenty-four hours to present us with a certified check in the amount bid. In the event check is not in our hands Friday, ten A. M. December twenty-second, nineteen-fifty, the mentioned equipment will go to the next highest bidder."

As we interpret the foregoing statement it did not extend the time for 24 hours for additional bids as insisted, but was made for the purpose of permitting the purchaser reasonable time within which to procure and deliver payment. Under the circumstances the seller was protecting the bidders against the hazard of having to carry large sums of cash, and it was not unreasonable to demand payment by cash or certified check. The announcement did not hold the sale open for other bids as insisted, and was in no way prejudicial to the conditional vendee.

▆ Finally it is insisted that the sale was arbitrarily fixed in Davidson County when the defendant knew that plaintiff's principal officer, J. B. Ham, had a place of business in Hamilton County where the sale could have been held without hardship. We find no merit in this insistence as the undisputed proof showed that the plaintiff's officers had full knowledge of the sale, where it was to be held, and there was no showing made that the defendant arbitrarily fixed the place of sale to the injury of the plaintiff.

▆ It is a settled rule that the seller or vendor may select the place of resale subject to the limitation that place thereof cannot be arbitrarily fixed to the injury of the buyer. Elmore v. Ritter Imp. Co., 169 Tenn. 343, 87 S. W. (2d) 1008, 1009.

In Elmore v. Ritter Imp. Co., supra, the Court said:

"Construed together, sections 7287 and 7288 provide for sale upon repossession (1) in the civil district where the property shall be situated after its repossession; (2) where it shall be situated at the time of sale, subject to the limitation suggested in Johnson City Buick Co. v. Johnson [165 Tenn. 349, 54 S. W. (2d) 946] that the place of sale cannot be arbitrarily fixed to the injury of the conditional vendee; and (3) if the property is removed by the purchaser from the county where the original sale was made, it may be sold where found, at the option of the seller."

It results that all assignments of error will be overruled and the judgment below will be affirmed at plaintiff's costs.

McAmis and Hale, JJ., concur.