STATE of Tennessee, DEPT. OF HUMAN SERVICES, Plaintiff–Appellee,

v.

Lesa Mae HAUCK, Ralph C. Hauck and Joe Sherill, Defendants,

Ralph C. Hauck, Appellant.

Court of Appeals of Tennessee, Eastern Section.

Nov. 9, 1993.

Permission to Appeal Denied by Supreme Court Feb. 28, 1994.

James P. Smith, Jr., Crossville, for appellant.

Charles W. Burson, Atty. Gen. and Reporter and Dianne Stamey Dycus, Asst. Atty. Gen., for appellee.

## OPINION

McMURRAY, Judge.

This case originated with the filing of a petition by the Department of Human Services seeking to terminate all parental rights of the defendants to the minor children, Sharlene Dawn Reagan and Aaron Joseph Hauck. After a bench trial the court entered a judgment terminating all parental rights. From this judgment, the defendant, Ralph C. Hauck, appealed. We affirm the judgment of the trial court.

The defendant presents the following issues for our review:

1. Whether the trial court erred in granting the plaintiff's motion for leave to amend the petition by adding additional grounds for the termination of rights of

the defendant immediately prior to the commencement of the trial, over defendant's objection and without granting defendant's request for a continuance?

2. Whether the trial court erred in ruling that there was clear and convincing evidence to support a finding that the defendant had engaged in such conduct prior to incarceration[1] as to exhibit wanton disregard for the welfare of the child as contemplated by T.C.A. § 37–1–102?

3. Whether the trial court erred in finding that there was clear and convincing evidence that the defendant committed severe child abuse against a sibling under eleven years of age of the defendant's natural child as contemplated by T.C.A. § 37–1–147(d)(4)?

Lesa Mae Hauck is the natural mother of Sharlene Dawn Reagan and Aaron Joseph Hauck. The defendant, Ralph C. Hauck, married Lesa Mae Hauck after Sharlene Dawn Reagan was born. The defendant, Joey Sherill is the putative father of Sharlene Dawn Reagan. As previously noted the court terminated all the defendants' parental rights to both children and Ralph C. Hauck, alone, appealed.

We will first discuss the issue of the amendment and denial of a continuance. In the original petition, the grounds alleged for termination of the appellant's parental rights were as follows:

> ... [T]he defendant has wilfully abandoned the minor child, Aaron Joseph Hauck, for more than four (4) consecutive months prior to the filing of this petition; he is serving a life sentence in prison and therefore will never be able to provide a suitable home for said child; and he is guilty of severe child abuse to a sibling of his son.

On the day of the trial and over the objections of the defendant, the trial court allowed the appellee to amend its complaint to assert the following:

1. Ralph C. Hauck has abandoned the child, Aaron Joseph Hauck, in that his conduct prior to incarceration was in wanton disregard of the child's welfare. Specifically, Mr. Hauck has a long history of criminal conviction culminating in the kidnapping and murder of Ida Kern less than twenty-four hours prior to the birth of Aaron Joseph Hauck and resulting in a life plus forty (40) year sentence. Further, while in the care of Ralph C. Hauck, Aaron Joseph Hauck was neglected, being left dirty with severe cradle cap and diaper rash. Aaron Joseph Hauck's sister, while in the care of Ralph C. Hauck and Lesa Mae Hauck, was severely burned which fact was hidden from the public and the child was denied proper medical care by Ralph C. Hauck.

2. Ralph C. Hauck is currently incarcerated and not eligible for parole until the year 2026. He has made no attempts prior to the filing of the petition for termination of parental rights to provide any alternative home or support for the child during his incarceration. Since Mr. Hauck cannot provide for the care of his child, the child by definition would remain dependent and neglected. There is nothing to indicate, if Mr. Hauck were released and able to care for the child, that he would now properly care for the child, particularly, considering his past history of violence, abuse and neglect. It is unlikely that this situation could be remedied at an early date. The continuation of the legal parent-child relationship greatly diminishes the child's chance of early integration into a stable and permanent home.

The trial court allowed the amendment in an order signed the day of the trial, which order contained the following caveat: "No prejudicial surprise testimony in support of new grounds as alleged herein are admissible."

Firstly, we note that Rule 15.01, Tennessee Rules of Civil Procedure provides in pertinent part:

> 15.01. Amendments.—A party may amend his pleadings once as a matter of course before a responsive pleading is

---

1. The defendant is presently serving a life sentence for murder and a 40 year sentence for aggravated kidnapping. The sentences were imposed consecutively.

served ... Otherwise a party may amend his pleadings only by written consent of the adverse party or by leave of court; and *leave shall be freely given* when justice requires. (Emphasis added).

 Additionally rules relating to amendment of pleadings are liberal and trial court's discretion in allowing amendments *at any stage of the proceeding* should not be disturbed on appeal unless it plainly appears that such discretion was abused. *See Derryberry v. Ledford,* 506 S.W.2d 152 (Tenn.App. 1973). (Emphasis added). More significant, however, is the appellant's failure to raise any issue relating to the admission of evidence in violation of the trial court's caveat hereinabove quoted. Therefore, we must presume that there was no prejudice to the defendant.

 With regard to the failure of the court to grant a continuance, it is well-settled that the granting or failure to grant a continuance rests in the sound discretion of the trial court and we will not reverse unless there is a clear showing of abuse. *See Kerney v. Cobb,* 658 S.W.2d 128 (Tenn.App.1983) and *Morrow v. Drumwright,* 202 Tenn. 307, 304 S.W.2d 313 (1957). Under the circumstances of this case, we find no abuse of discretion. Appellant's first issue is without merit.

 As to the second issue, we must first examine the provisions of T.C.A. §§ 37–1–101, et seq. T.C.A. § 37–1–102 provides in pertinent part as follows:

Definitions.

(b) As used in this part, unless the context otherwise requires:

(1) "Abandoned child" means a child whose parents have willfully failed to visit or have willfully failed to support or make reasonable payments toward his support for four (4) consecutive months immediately preceding institution of an action or proceeding to declare the child to be an abandoned child;

(A) ...

(B)(i) A parent who is incarcerated at the time of the institution of an action or proceeding to declare the child to be an abandoned child or who has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding and who has willfully failed to visit or has willfully failed to support or to make reasonable payments towards the support of the child for four (4) months immediately preceding such parent's incarceration, or who has engaged in such conduct prior to incarceration as to exhibit a wanton disregard for the welfare of the child, shall be deemed to have abandoned the child. This section only applies to those cases in which the child is in the custody of the department of human services or of a licensed child-placing agency at the time of the institution of such proceedings and in which the parental rights of the child's remaining parent have been or are terminated either by a surrender pursuant to § 36–1–114, or by an order of a court of competent jurisdiction, or in which the child's remaining parent is deceased;

(ii) Before any parent who is incarcerated or who was incarcerated at the time that an action or proceeding to declare such parent's child abandoned was instituted may be deemed to have abandoned such child, it must be affirmatively shown to the court that such incarcerated parent received actual notice of the following:

(a) The time and place of the hearing to determine if the child has been abandoned;

(b) That the hearing will determine whether the incarcerated parent has abandoned such child and whether all parental rights to such child should be terminated;

(c) That the incarcerated parent has the right to appear at such hearing and contest the allegation that such incarcerated parent has abandoned the child; and

(d) That if the incarcerated parent wishes to appear at the hearing and contest the allegation, such incarcerated parent will be provided with transportation to such hearing and will be provided with a court appointed attorney to assist

such incarcerated parent in contesting such allegation;

\* \* \* \* \* \*

The defendant was incarcerated at the time of the institution of these proceedings. Clearly, all procedural requirements of the statute have been met. He had the necessary notice of the hearing, was present and contested the allegations in the petition, and had a court-appointed attorney to represent him. The child in question was in the custody of the Department of Human Services at the time of the institution of the proceedings and the parental rights of the mother had previously been terminated by order of the court entered on January 30, 1992. Hence, we are left to weigh the evidence and determine if, as did the trial court, that there is clear and convincing evidence to support a finding that the defendant had engaged in such conduct prior to incarceration *as to exhibit wanton disregard for the welfare of the child.* The primary evidence relating to the "wanton disregard" for the welfare of the child was the condition the child was found to be in at the time the representatives of the Department of Human Services visited the home. Donna Yarbrough, at that time, a Social Counselor with the Department of Human Services testified that when she went to the Hauck home, she found the child to have "cradle cap, very bad cradle cap. He was filthy dirty. He had diaper rash so bad that it looked like he had been burned. He had blisters the size of half dollars on him." The blisters were located in the genital area. She further testified that "his feet were scaly and he was so dirty that at one point we thought his ankles were bruised." The trial court in its memorandum opinion dictated from the bench on the date of trial stated the following:

> Further, the court finds that taken in its entirety ... the proof establishes that prior to Mr. Hauck's incarceration he had engaged in such conduct ... as to exhibit a wanton disregard for the welfare of the child.
>
> Now part of this is due to the fact of the condition this child was in with severe

diaper rash, with places as big as a quarter or half a dollar ...

Standing alone, we are unwilling to say that evidence of severe cradle cap, diaper rash and filthy conditions in general are sufficient to constitute such wanton disregard for the welfare of the child so as to constitute abandonment.[2] T.C.A. § 37–1–147(d), however, provides in pertinent part as follows:

(d) After hearing evidence on a termination petition, court may terminate parental rights if it finds on the basis of clear and convincing evidence that termination is in the child's best interest and that one (1) or more of the following conditions exist:

(1) The child has been removed from the custody of the parent by the court for at least one (1) year and the court finds that:

> (A) The conditions which lead to the removal or other conditions which all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's return to the care of the parent(s) still persists;
>
> (B) There is little likelihood that these conditions will be remedied at an early date so that the child can be returned to the parent in the near future; and
>
> (C) The continuation of the legal parent and child relationship greatly diminishes the child's chances of early integration into a stable and permanent home.

\* \* \* \* \* \*

(4) The parent has been found to have committed severe child abuse against the child if the child is under eleven (11) years of age at the time of the abuse, or any sibling of the child if the sibling is under eleven (11) years of age at the time of the abuse, one (1) or more times ...

We are of the opinion that the totality of the evidence, including the pre-incarceration conduct of the defendant, coupled with the obvious inability of the defendant to establish and provide a stable home for the child and the total lack of any chance of an early integration of the child into a stable and permanent home unless parental rights of

2. See T.C.A. § 37–1–102(b)(1)(B)(i).

the defendant are terminated is so compellingly in the best interests of the child that the defendant's parental rights must be terminated. We concur with the trial judge that an abandonment has been clearly and convincingly established. Further, the legislative intent clearly set out in T.C.A. § 37–2–401(c) is exceptionally fitting to the facts of this case.

37–2–401. Legislative intent—Construction of this part.—

(c) When a parent by such parent's actions or failure to act fails to fulfill such parent's responsibilities as a parent, the court shall consider such conduct in determining whether to terminate parental rights, regardless of whether the parent intended such parent's conduct to constitute a relinquishment or forfeiture of such parent's parental rights. *When the interest of a child and those of an adult are in conflict, such conflict is to be resolved in favor of a child, and to these ends this part shall be liberally construed.* (Emphasis added).

We find no merit in the appellant's second issue.

■ The appellant next challenges the sufficiency of the evidence to support the trial court's finding that the defendant had committed severe child abuse against a sibling under eleven years of age. The sibling in question is Sharlene Dawn Reagan, a sister by the half blood, to Aaron Joseph Hauck.

The evidence demonstrates that at the time the Department of Human Services representatives went to the Hauck home, they found Sharlene Dawn Reagan with second degree burns over fifteen percent (15%) of her body. The evidence is somewhat conflicting as to how the child was burned. The defendant, however, is not charged with having caused the burns nor found to have been the cause of the burns. The predicate of the finding by the trial court that the defendant was guilty of severe child abuse toward a sibling was the failure of the defendant to obtain medical attention for the child. His conclusions are stated in his memorandum opinion:

There are basically two serious questions that we have here. The first is was the defendant guilty of severe child abuse toward a sibling. I find that the proof is insufficient to show by clear and convincing evidence that the defendant actually injured the child, Sharlene Dawn Reagan.

But I do find by clear and convincing evidence that his failure to do anything from when this happened on Saturday until when the D.H.S. got there on Thursday and to take this child for treatment when it was in the condition that's shown by these photographs and is described by Dr. Koucheki does constitute severe child abuse by utter and total neglect of the child's welfare.

But, you know, assuming the proof does not show any injury on his part, or that he injured the child—and I don't think it does show that by the standard of evidence that we have in this case. In fact, I don't think it even more likely than not under the proof in this case that he did it. But I do think that when a parent sees a child that's been injured in this fashion and doesn't do anything about it for a period of five (5) days that does constitute severe child abuse.

Suffice it to say that we agree with the conclusions reached by the trial court. We further agree that the evidence clearly and convincingly establishes that the defendant knew of the child's condition, had the opportunity, ability and an available medical facility to properly obtain medical attention for the child, yet he failed to do so. We find no merit in appellant's final issue.

We affirm the judgment of the trial court in all respects. Costs of this appeal are taxed to the appellant and this cause is remanded to the trial court.

SANDERS, P.J. (E.S.), and GODDARD, J., concur.